**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RICHARD PELLEGRINO, AARON BRIDGES, and COBB SCLC FREEDOM AND JUSTICE FUND, INC. | |
| Plaintiffs, | |
| vs. | CIVIL ACTION FILE NO. 1:17-cv-00257-AT |
| CITY OF SMYRNA, GEORGIA, et al., | |
| Defendants. | |

**PLAINTIFFS' BRIEF IN SUPPORT OF PRELIMINARY AND/OR PERMANENT INJUNCTIVE RELIEF**

Plaintiffs Richard Pellegrino ("Pellegrino"), Aaron Bridges ("Bridges"), and Cobb SCLC Freedom and Justice Fund, Inc. ("Cobb SCLC") (collectively "Plaintiffs"), file this brief in support of partial preliminary and permanent injunctive relief as to certain challenged ordinance subsections, reserving other injunctive relief and damage claims for later resolution. Plaintiffs currently seek three injunctions against Smyrna. First, Plaintiffs seek an injunction against Defendant-Smyrna precluding future enforcement of Smyrna Ordinance § 66-9.1(e) as unconstitutionally discriminating based on content, and as being vague, overbroad, and conveying standardless discretion. Second, Plaintiffs seek an injunction against enforcement of Smyrna Ordinance § 66-9.1(g)(1) as creating an

impermissible rebuttable presumption regarding intent in a criminal statute, making this provision offensive to both due process and the First Amendment. Third, Plaintiffs seek an injunction against Smyrna's policy, pattern, or practice of allowing private entities organizing events in traditional public fora to exclude private citizens on any—or no—basis.

**STATEMENT OF UNDISPUTED FACTS**

This portion of the lawsuit is a facial challenge, and the key facts for this motion are simple and undisputed:

1. Plaintiffs are frequent leafletters in the City of Smyrna who seek to distribute leaflets to educate the public about matters of public concern, including police violence in Smyrna and Cobb County.
2. Plaintiffs await a ruling of this Court, and will resume leafletting as soon as, and within days of, this Court's resolution of this portion of the case.
3. Plaintiffs were repeatedly directed to cease leafleting activity by Defendants while engaging in constitutionally protected leafleting activity.
4. Smyrna Ordinance § 66-9.1(e) classifies prohibited and permitted leafleting activity based on content, allowing greater protection for certain forms of speech without narrow tailoring or a compelling government justification. Section 66-9.1(e) provides:

> (e) *Prohibitions; public places; vacant premises; vehicles; exemptions.*

> (1) No person shall throw, post or deposit any handbill in or upon any sidewalk, street or other public place within the city, nor shall any person hand out or distribute or sell any handbill in any public place; provided, however, that it shall not be unlawful on any sidewalk, street or other public place within the city for any person to hand out or distribute, without charge to the receiver thereof, any handbill to any person willing to receive it.
> (2) No person shall throw, post or deposit any handbill in or upon any private premises which are vacant and which could be reasonably ascertained to be vacant.
> (3) No person shall throw, post or deposit any handbill in or upon any vehicle; provided, however that it shall not be unlawful in any public place for a person to hand out or distribute without charge to the receivers thereof, a handbill to any occupant of a vehicle who is willing to accept it.
> (4) Handbills for political, charitable and other nonprofit purposes and newspapers are exempt from this section; however, if a newspaper is directly notified that a citizen does not wish to receive it, such request must be honored, or further distribution will be considered a violation of this section.

(Emphasis added).

5. Smyrna Ordinance § 66-9.1(g)(1) creates an impermissible rebuttable presumption regarding intent in a criminal statute, making this provision offensive to both due process and the First Amendment:

> (g) *Violation.*
> (1) If any handbill is found on any public or private premises or vehicle in violation of this article, it shall be a rebuttable presumption that the person or persons whose names(s), address(es) or telephone number(s) appear thereon has violated this article.

(Emphasis added).

6. Smyrna Police officers allowed a private entity, Defendant JRM Management Services, Inc. ("JRM"), to enforce Smyrna Ordinance § 66-9.1 during an event which was open to the public and took place in a public park and traditional public forum. Smyrna Police officers deferred to JRM's requests that Plaintiffs be silenced and removed from the traditional public fora, despite knowledge that Plaintiffs were lawfully exercising their First Amendment rights.

While other facts will be developed in discovery, these undisputed facts are all that are needed to decide the instant motion.

## ARGUMENT AND CITATIONS OF AUTHORITY

For the reasons stated below, both preliminary and permanent injunctive relief are appropriate in this case.

## I. PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

A plaintiff seeking a preliminary injunction must establish:

(1) a substantial likelihood that plaintiff will prevail on the merits,

(2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted,

(3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and

(4) that granting the preliminary injunction will not disserve the public interest.

*K.H. Outdoors LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006); *Johnson v. United States Dep't of Agriculture*, 734 F.2d 774, 781 (11th Cir. 1984); Fed. R. Civ. P. 65(b). A plaintiff need only show a substantial likelihood of success on at least one count of the complaint, not all counts. *Butler v. Ala. Judicial Inquiry Comm'n*, 111 F. Supp. 2d 1224, 1230 (M.D. Ala. 2000).

No evidentiary hearing is necessary here given the undisputed facts and facial challenge. *See Cumulus Media, Inc. v. Clear Channel Commc'ns*, 304 F.3d 1167, 1178 (11th Cir. 2002) ("An evidentiary hearing is required for entry of a preliminary injunction only where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue." (internal quotations omitted)); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1311 (11th Cir. 1998) (holding that "Rule 65 does not require an evidentiary hearing," and that a hearing is unnecessary where "material facts are not in dispute"); *Budlong v. Graham*, 488 F. Supp. 2d 1245, 1249 (N.D. Ga. 2006) ("The Court does not read Eleventh Circuit precedent to require a trial court to hold an evidentiary hearing whenever facts might be in dispute. The determination of whether the germane facts are 'bitterly contested' is not, as this Court understands it, an exercise in the conceivable, but an assessment made on the papers and arguments in the record."). Furthermore, "[a]t the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be

admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).

Moreover, this is a case where consolidation of the preliminary injunction with permanent injunctive relief is appropriate. *Drummond v. Fulton Cty. Dep't of Family and Children's Servs.*, 563 F.2d 1200, 1204 (5th Cir. 1977) ("[T]he consolidation represented a responsible exercise of judicial discretion in view of the essentially legal nature of the contest and the need for prompt action on this case"); *Budlong*, 488 F. Supp. 2d at 1248–50 (analyzing the factors to be considered in consolidating a preliminary injunction with a trial on the merits without the necessity of a hearing).

Plaintiffs do not waive any relief, including damages, in seeking consolidation.

## A. PLAINTIFFS HAVE STANDING

Both the individual plaintiffs, Pellegrino and Bridges, as well as the Cobb SCLC,[1] plainly have standing to challenge the Smyrna Ordinance, and to seek an injunction against police interference with their lawful leafleting activity.[2]

---

1 "An organization has standing to enforce the rights of its members 'when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the

Standing principles in First Amendment cases are grounded in concerns about "self-censorship" and ensuring "breathing space" for speech. *Walker v. City of Birmingham*, 388 U.S. 307, 345 (1967) ("We have molded both substantive rights and procedural remedies in the face of varied conflicting interests to conform to our overriding duty to insulate all individuals from the 'chilling effect' upon exercise of First Amendment freedoms . . . ."); *ACLU v. The Florida Bar*, 50 F.3d 901, 904 (11th Cir. 1995); *Reeves v. McConn*, 631 F.2d 377, 381 n.2 (5th Cir. 1980) ("[S]tanding requirements are less demanding when First Amendment freedoms

---

claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Florida State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)). "These are the sole requirements." *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999).

Pellegrino and Bridges are members of the Cobb SCLC and these individuals have standing as explained in greater detail, *infra*. However, "[w]hen the alleged harm is prospective, we have not required that the organizational plaintiffs name names" so long as the associational plaintiff can establish imminence. *Florida State Conference of the NAACP*, 522 F.3d at 1160; *Stincer*, 175 F.3d at 882 ("Nor must the association name the members on whose behalf suit is brought."). Leafleting generally, and leafleting about police violence in Cobb County is certainly "germane" to Cobb SCLC's purpose. And, because the relief requested herein is injunctive, "individual participation of the organization's members is 'not normally necessary.'" *Id.* (citing *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996)).

[2] Plaintiffs assert both facial and overbreadth standing. *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755–56 (1988); *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984) (Plaintiffs may "challenge laws written so broadly that they may inhibit the constitutionally protected speech of third parties"). Under this theory, the facial invalidity of a statute renders irrelevant the issue of whether a plaintiff's own speech is protected.

are endangered."); *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 2003) ("[W]e agree with the First Circuit's admonition that the credible threat of prosecution standard 'is quite forgiving.'").[3]

Indeed, in order to afford free speech "breathing space," the Supreme Court has allowed challenges to restrictions on speech before any legal action is taken. "[I]t is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [action that] deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).

The Eleventh Circuit has consistently allowed free speech challenges to proceed where the litigants can show that their speech is arguably violative of a restriction and they can show a basis for the speech-chilling fear of prosecution in the future. *See, e.g.*, *Jacobs v. The Florida Bar*, 50 F.3d 901, 904–905 (11th Cir. 1995) (standing proper where plaintiff intended "to engage in a specific course of conduct 'arguably affected with a constitutional interest'") (quoting *ACLU v. The Florida Bar*, 999 F.2d 1486, 1492 (11th Cir. 1993)); *International Society for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 817–819 (5th Cir. 1979) (standing proper where "allegedly unconstitutional statute interferes with the way the plaintiff would normally conduct his affairs"); *see also Coal. for the Abolition of*

[3] The Eleventh Circuit rejects rigid pleading standards for standing. *See Smith v. Meese*, 821 F.2d 1484, 1496 n.9 (11th Cir. 1987); *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994).

*Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1309 (11th Cir. 2000) (standing to bring facial challenge where parties sought to engage in constitutional speech that ordinance would restrict). These cases rest on the Supreme Court's reasoning that:

> When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed . . . , and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief. . . . [But w]hen plaintiffs "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible," they do not allege a dispute susceptible to resolution by a federal court.

*Babbitt v. Farm Workers Nat'l. Union*, 442 U.S. 289, 302 (1979) (citations omitted).

Here, Defendants repeatedly told Plaintiffs to cease engaging in the distribution of their leaflets, seized and arrested Plaintiffs, intimidated them from engaging in protected speech, and threatened to arrest and prosecute them if they did not stop leafleting and leave the downtown Smyrna area. Standing in this case is governed by *Steffel v. Thompson*. There, "Petitioner, who had twice been warned to stop handbilling on an exterior sidewalk of a shopping center against American involvement in Vietnam and threatened with arrest by police if he failed to do so . . . brought an action for injunctive and declaratory relief." 415

U.S. at 452. Reversing lower court dismissal of the case, the Supreme Court held the leafletter had standing:

> [P]etitioner has alleged threats of prosecution that cannot be characterized as 'imaginary or speculative,' He has been twice warned to stop handbilling that he claims is constitutionally protected and has been told by the police that if he again handbills at the shopping center and disobeys a warning to stop he will likely be prosecuted. The prosecution of petitioner's handbilling companion is ample demonstration that petitioner's concern with arrest has not been 'chimerical,' In these circumstances, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights. Moreover, petitioner's challenge is to those specific provisions of state law which have provided the basis for threats of criminal prosecution against him.

*Id.* at 459 (citations omitted). Plaintiffs intend to distribute leaflets in the traditional public fora of Smyrna as soon as this Court frees them of the fear of arrest by enjoining the unconstitutional ordinance. *Steffel* is on all fours with the present action: as in *Steffel*, on multiple occasions Plaintiffs were told to cease leafleting and leave a traditional public forum or face arrest and prosecution.

**B. PLAINTIFFS ARE ENTITLED TO AN INJUNCTION AGAINST SMYRNA ORDINANCE § 66-9.1**

Plaintiffs were repeatedly ordered to cease leafleting under threatened arrest and prosecution under Smyrna Ordinance § 66-9.1. That ordinance is unconstitutional because it discriminates based on content in a traditional public

forum and because it contains a mandatory presumption as to an element of the offense.

1. Leafleting is an Activity Protected by the First Amendment

"[P]assing out leaflets is an activity protected by the First Amendment." *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1181 (11th Cir. 2009); *Hill v. Colorado*, 530 U.S. 703, 715 (2000) (finding "[t]he First Amendment interests" of leafletters to be "clear"); *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) ("This Court has often recognized that the activity of peaceful pamphleteering is a form of communication protected by the First Amendment.").

2. Smyrna's "Village Green" Area of Parks and Sidewalks is a Traditional Public Forum—Regardless of the Jonquil Festival or JRM's Management Thereof

Plaintiffs were prevented, under threat of arrest, from distributing leaflets in certain parts of the area described as the Village Green in "downtown" Smyrna.[4] Specific areas from which Plaintiffs were removed include the sidewalks surrounding the Twentieth Century Veterans' Memorial and the Smyrna Community Center. Plaintiffs' ejection from these public areas took

[4] Materials describing the Village Green on the City of Smyrna's website describe the public nature of the site's genesis. *See* City of Smyrna, The Village Green, http://www.smyrnacity.com/residents/downtown/the-village-green (describing the reason for being of the Village Green: "The Council felt there needed to be a common meeting ground, a focal point where people could come together"), *archived at* https://perma.cc/3GAL-W3C2.

place, in part, during the Spring Jonquil Festival, which was a two-day festival that was free and open to the public.[5]

These sidewalk and park areas of Smyrna's Village Green from which Plaintiffs were expelled are traditional public fora. "[P]ublic places historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be public forums." *United States v. Grace*, 461 U.S. 171, 177 (1983). "Use of the streets in public places has, from ancient times, been part of the privileges, immunities, rights and liberties of citizens." *Hague v. CIO*, 307 U.S. 496 (1939) (unconstitutional to give police chief veto power over leafleting in public places). "[S]treets are natural and proper places for the dissemination of information." *Schneider v. Town of Irvington*, 308 U.S. 147, 163 (1939). "One who is rightfully on a street which the state has left open to the public carries with him there as elsewhere the constitutional right to express his views in an orderly fashion." *Jamison v. Texas*, 318 U.S. 413, 416 (1943). In *Terminiello v. Chicago*, the Supreme Court held that even in the face of angry counter demonstrators, police may rarely if ever unilaterally stifle speech. 337 U.S. 1 (1949).

---

[5] City of Smyrna, Event Calendar, Spring Jonquil Festival, http://www.smyrnacity.com/Home/Components/Calendar/Event/7582/15 (providing that "[t]he City of Smyrna welcomes all on the weekend of April 23 & 24" and advertising "FREE ADMISSION!"), *archived at* https://perma.cc/LE67-FL83.

The fact that the City of Smyrna may have arranged for JRM to provide event management services of a festival that was free and open to the public does not transform the parks and sidewalks of that area into private property or a limited forum. In analyzing a forum, courts look to the area's "nature," "use," "characteristics," "purpose," and "function." *Bloedorn v. Grube*, 631 F.3d 1218, 1233–34 (11th Cir. 2011). In conducting this analysis, traditional public fora retain their character during events hosted by private entities that are free and open to the public. *See McMahon v. City of Panama City Beach*, No. 5:16cv60-MW/GRJ, 2016 WL 1449680, at *7–10 (N.D. Fla. Apr. 12, 2016) (granting preliminary injunction preventing interference with leafleting activity; holding that the nature of a for-profit event held at city festival site, which was public park, was a "traditional public forum," despite exclusive use provision in city permitting scheme, where event was free and open-to-the public, contained no barricades, barriers, or attendants meaningfully limiting egress and ingress, and where event contained no signs conveying message that event was private and prohibiting trespassing, and any person could choose to walk into event just as one could choose to walk to same location when event was not being held); *Jankowski v. City of Duluth*, No. CIV. 11–3392, 2011 WL 7656906, at *4–9 (D. Minn. Dec. 20, 2011) (granting preliminary injunction and finding that park retained its character as a traditional public forum during a private event); *see also Johnson v. Minneapolis*

*Park & Recreation Bd.*, 729 F.3d 1094, 1098–1099 (8th Cir. 2013) (noting party agreement that park remains a traditional public forum during a fesitival); *Teesdale v. City of Chicago*, 690 F.3d 829, 830, 834 (7th Cir. 2012) ("[C]ity streets are a traditional public forum, and their character as a public forum is retained even though they are used for a public festival sponsored by a private entity."); *Saieg v. City of Dearborn*, 641 F.3d 727, 734–35 (6th Cir. 2011) (holding that leafleting restrictions on sidewalks adjacent to private festival were unconstitutional); *Startzell v. City of Philadelphia*, 533 F.3d 183, 190 (3d Cir. 2008) ("The issuance of a permit to use this public forum does not transform its status as a public forum."); *Gathright v. City of Portland*, 439 F.3d 573, 576 (9th Cir. 2006) (holding that city ordinance prohibiting any person from unreasonably interfering with permittee's use of a public park violated the First Amendment); *Parks v. City of Columbus*, 395 F.3d 643, 652 (6th Cir. 2005) (holding that streets "remained a traditional public forum notwithstanding the special permit that was issued to the Arts Council," a private organization); *Childress v. Walker*, 943 F. Supp. 2d 1332, 1348 (M.D. Ala. 2013), *aff'd*, 554 Fed. App'x. 834 (11th Cir. 2014) ("[A] permit does not give its holder the unfettered ability to exclude those who are engaged in protected speech at a public event that is being held in a public forum, and does not give a police officer probable cause to arrest those individuals when none otherwise exists."); *Zalaski v. City of Hartford*, 838 F. Supp. 2d 13, 37 (D. Conn. 2012), *aff'd in*

*part, vacated in part on other grounds, remanded*, 723 F.3d 382 (2d Cir. 2013) ("[T]he Court has not found any legal authority that a permit allowing a private party to stage a public event has the effect of destroying the historical public forum status traditionally bestowed on parks and streets."); *Heffron v. International Society of Krishna Consciousness*, 452 U.S. 640, 651 (1981) (holding that a license requirement for the distribution of written materials at a state fair can be a permissible place and manner restriction) .

3. Smyrna Ordinance § 66-9.1 Unconstitutionally Discriminates Against Speech Based on Content

Smyrna Ordinance § 66-9.1(e) impermissibly discriminates amongst leaflets based on their content, providing for greater legal protection for leaflets for "political, charitable and other nonprofit purposes and newspapers" than for all other forms of speech contained in leaflets. This content discrimination violates the First Amendment. "[L]aws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994). Content-based restrictions on speech are "presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). They are subject to the "most exacting scrutiny," *Turner*, 512 U.S. at 642, because they "pose the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress

unpopular ideas or information or manipulate the public debate through coercion rather than persuasion," *id*. at 641.

Recently, in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), the Supreme Court held that where distinctions were drawn entirely based on the communicative content of signs, the code was content-based on its face and subject to strict scrutiny. Actual desire to stifle certain circumscribed expressive content or to single out certain messages, the Court held, is irrelevant: "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* at 2228 (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). Here, important expressive conduct, including the ability to distribute leaflets in vacant spaces, to vehicles, and to persons without first obtaining consent, is allowed for certain forms of leaflets but denied to other forms of leaflets—based entirely on the leaflets' content.

Because Smyrna Ordinance § 66-9.1 imposes content-based restrictions on speech, "those provisions can stand only if they survive strict scrutiny, 'which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Id.* at 2231 (quoting *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734

(2011)). Smyrna bears this burden. *See id.* It is unlikely that City of Smyrna can put forward justifications sufficiently compelling and narrowly tailored to allow § 66-9.1's content discrimination to survive. Smyrna Ordinance § 66-9.1(e) is so over- and underinclusive in its scope that it almost certainly cannot survive strict scrutiny. *See Reed v. Town of Gilbert*, 135 S. Ct. at 2232 ("[A] 'law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited.'" (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002))); *Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656, 1668 (2015) ("[U]nderinclusiveness can raise doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint. . . . Underinclusiveness can also reveal that a law does not actually advance a compelling interest." (citations and quotations omitted)); *Burk v. Augusta-Richmond Cty.*, 365 F.3d 1247 (11th Cir. 2004) (noting a gap between an ordinance's regulation of "countless expressive activities that do not threaten" its "purported goals" while leaving intact "other expressive activities that do threaten the harms," before finding the ordinance could not survive strict scrutiny); *see also* 1 Smolla & Nimmer on Freedom of Speech § 2:67.50 (2016) (discussing the "Swiss cheese" principle in strict scrutiny jurisprudence).

4. Smyrna Ordinance § 66-9.1 Unconstitutionally Requires a Mandatory Presumption Regarding an Element of a Criminal Offense, Violating the Due Process Clause and Illicitly Chilling Core First Amendment Speech

Violation of Smyrna Ordinance § 66-9.1 is a criminal offense punishable as a misdemeanor by up to six months imprisonment, a $1,000 fine, probation, and/or court ordered community service. *See* Smyrna Ordinance § 66-9.1(h)(1); Smyrna Ordinance § 1-8. The mandatory rebuttable presumption portion of the ordinance, § 66-9.1(g)(1), provides that if a leaflet is found in a prohibited place, it shall be legally presumed that the person(s) identified in that leaflet were responsible for placing the leaflet in the impermissible location, without regard to whether or not the identified person(s) was responsible for causing the leaflet to be put there.[6]

This mandatory presumption in a criminal provision violates the Due Process Clause. Where the mandatory presumption provision governs speech activity, the provision is all the more constitutionally noxious. As an initial matter, "[t]he Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense." *Capella v. California*, 491 U.S. 263, 265 (1989) (finding that directions to the contrary "subvert the

[6] Section 66-9.1(g)(1) provides, in full: "If any handbill is found on any public or private premises or vehicle in violation of this article, it shall be a rebuttable presumption that the person or persons whose names(s), address(es) or telephone number(s) appear thereon has violated this article." (Emphasis added).

presumption of innocence accorded to accused persons") (citing *In re Winship*, 397 U.S. 358, 364 (1970)); *see also Sandstorm v. Montana*, 442 U.S. 510, 524 (1979) ("Because [the] jury may have interpreted the judge's instruction as constituting either a burden-shifting presumption . . . or a conclusive presumption . . . , and because either interpretation would have deprived defendant of his right to the due process of law, we hold the instruction given in this case unconstitutional."); *Potts v. Kemp*, 814 F.2d 1512, 1514 (11th Cir. 1987) ("A mandatory rebuttable presumption concerning the issue of intent is impermissible under the Due Process Clause. Such a presumption 'relieves the State of the affirmative burden of persuasion on the presumed element by instructing the jury that it must find the presumed element unless the defendant persuades the jury not to make such a finding.'" (citing *Francis v. Franklin*, 471 U.S. 307 (1985))).

Subsection 66-9.1(e) contains the relevant "prohibitions" regarding leafleting activity, which provide that "[n]o person shall throw, post, or deposit any handbill in" various locations. *See* Smyrna Ordinance § 66-9.1(e)(1)–(3). Subsection 66-9.1(g)(1) provides that a person can be arrested, prosecuted, and convicted under subsections 66-9.1(e)(1)–(3) without any proof that the person actually violated any provision of the Smyrna leafleting code. This presumption violates due process by relieving Smyrna of the burden of the presumed element—that a handbill was "throw[n], post[ed], or deposit[ed]"—whether the

standard be probable cause or beyond a reasonable doubt. This presumption violates Due Process because it permits Smyrna to arrest, prosecute, and convict a person based solely on the fact of leafleting itself. Relatedly, in the event that Smyrna seeks to construe its mandatory presumption as instead imposing strict criminal liability for leaflets that make their way to a prohibited place, it must be noted that criminal prosecutions of individuals without a *mens rea* requirement are constitutionally suspect. *Morissette v. United States*, 342 U.S. 246, 250 (1952) ("[W]rongdoing must be conscious to be criminal."); *United States v. Balint*, 258 U.S. 250, 251 (1922) (noting the "general rule" that a guilty mind is "a necessary element in the indictment and proof of every crime"). This suspicion must be at least as strong when it comes to speech protectable by the First Amendment. *Cf. Elonis v. United States*, 135 S. Ct. 2001, 2013 (2015) (reversing conviction where indictment alleged no *mens rea* requirement and declining to clarify what standard the First Amendment would require).

A mandatory presumption in a criminal statute is especially pernicious where it burdens First Amendment rights. This is so because such a presumption not only violates due process but also "chills constitutionally protected political speech because of the possibility that the [government] will prosecute—and potentially convict—somebody engaging only in lawful political speech at the core of what the First Amendment is designed to protect." *Virginia v. Black*, 538

U.S. 343, 365 (2003) (plurality opinion). Criminal provisions of this sort are unconstitutional on their face because they "'create an unacceptable risk of the suppression of ideas.'" *Id.* (quoting *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 965, n.13 (1984)). Thus, Smyrna Ordinance § 66-9.1(g)(1)'s mandatory presumption is facially unconstitutional under either the First or Fourteenth Amendments, and its enforcement should be enjoined.

### **C. THIS COURT SHOULD ENJOIN THE CITY OF SMYRNA'S POLICY, PATTERN, OR PRACTICE OF ALLOWING PRIVATE ENTITIES TO EXCLUDE PRIVATE CITIZENS FROM TRADITIONAL PUBLIC FORA**

Plaintiffs were first told by Defendant JRM that they were not allowed to leaflet in the area of the Jonquil Festival. Plaintiffs were then approached by Smyrna Police officers who also directed Plaintiffs to cease their leafleting activity, claiming that JRM could bar leafleting even in a traditional public forum such as sidewalks and parks. Smyrna Police officers threatened Plaintiffs with arrest if they did not immediately comply.

In allowing JRM to determine what forms of speech were permissible and impermissible, and by threatening private citizens with arrest for failing to bend their speech activity to JRM's whims, the City of Smyrna engaged in a policy, pattern, or practice of allowing event permit holders unfettered discretion to exclude private citizens from traditional public fora. Policies that veto speech violate the First Amendment. *Kunz v. New York*, 340 U.S. 290, 295 (1951)

(Government "can not vest restraining control over the right to speak . . . when there are no appropriate standards to guide [its] action."). This basic principle is no less true when the authority is a private entity operating in conjunction with government in a traditional public forum: "the policy of unquestioningly arresting anyone that the permit holder claims is trespassing, even given full knowledge that the permit holder revoked its permission in response to an otherwise-lawful exercise of free speech" is an unconstitutional infringement on First Amendment activity in traditional public fora. *McMahon v. City of Panama City Beach*, No. 5:16cv60-MW/GRJ, 2016 WL 1449680, at *16–17 (N.D. Fla. Apr. 12, 2016) (finding that "[t]he City has no interest—legitimate, significant, compelling, or otherwise—that is served by such a policy"); *see also Gathright v. City of Portland*, 439 F.3d 573, 577 (9th Cir. 2006) ("[T]he policy of allowing permittees unfettered discretion to exclude private citizens on any (or no) basis is not narrowly tailored to the City's legitimate interest in protecting its permittees' right[s].").

As the district court in *McMahon* recently noted in issuing a preliminary injunction in a case with stark similarities, such policies of public deference to private permit holders are antithetical to free speech:

> The City's stated policy of unquestioning deference to the whims of the permit holder in enforcing trespass statutes at a free and open-to-the-public event is, to put it gently, troubling. The

> traditional public forum is the most quintessential, the most sacrosanct place for citizens to assemble, communicate thoughts, and discuss public questions. It is a place that has immemorially been held in trust for the use of the public. But when a private actor is granted the unlimited discretion to suppress speech, whether based on its viewpoint, content, or anything else, the public forum is eviscerated. It loses its essence. It ceases to be a place dedicated to the *free and open* exchange of ideas.

*McMahon*, 2016 WL 1449680, at *17 (citations and quotations omitted). Policies of such broad deference cannot possibly be narrowly tailored. *Id.* ("[T]he policy is far too deferential to the caprice and fancy of the permit holder to be narrowly tailored to anything."). What is more, such policies are breeding grounds for viewpoint discrimination, *id.* at *19; *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992), an especially "egregious form" of content discrimination, *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828–829 (1995).

In light of the foregoing, Plaintiffs request that this Court enjoin Smyrna's policy, pattern, or practice of allowing and facilitating the exclusion of private citizens from traditional public fora by private entities. Before arresting or threatening to arrest a person engaged in speech activity in public, Smyrna Police officers must make an independent evaluation of fact instead of engaging in "willfully blind deference" to the wishes of a private party. *McMahon*, 2016 WL 1449680, at *20.

## II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION IS NOT ISSUED

The second factor for the Court to determine is whether the Plaintiffs will suffer irreparable harm absent a preliminary injunction. The answer is simple: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). Smyrna police officers' statements that they would arrest Plaintiffs if they continued to exercise their First Amendment Rights in the traditional public fora of Smyrna evidence a "direct penalization, as opposed to incidental inhibition[,] of First Amendment rights and thus could not be remedied absent an injunction." *K.H. Outdoors LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (citations and quotations omitted). Plaintiffs seek to leaflet in Smyrna in January 2017, and must await a ruling from this Court to do so without facing arrest.

## III. GRANTING THE INJUNCTION WILL NOT CAUSE SUBSTANTIAL HARM TO OTHERS

Issuance of the injunctions sought will not cause any harm to Defendants. The ordinance, as well as the policy, pattern, or practice sought to be enjoined are clearly unconstitutional. A "city has no legitimate interest in enforcing an unconstitutional ordinance." *Id.* The same is surely true of a clearly unconstitutional policy. *McMahon*, 2016 WL 1449680, at *17.

## IV. THESE NARROW INJUNCTIONS ARE IN THE PUBLIC INTEREST

The protection of free speech rights is always in the public interest, and the injunctions sought here will assure Plaintiffs' free speech rights and the rights of others.

## CONCLUSION

For all the above reasons, Plaintiffs request that this Court enter preliminary and permanent injunctions as set out in the Proposed Order.[7]

DATED: This the 23d day of January, 2017.

Respectfully submitted,

/s/ Gerald Weber

Gerald Weber
Georgia Bar No. 744878
Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
404-522-0507
wgerryweber@gmail.com

/s/ Craig Goodmark

Craig Goodmark
Georgia Bar No. 301428
Goodmark Law Firm
One West Court Square, Suite 410
Decatur, Georgia 30030
404-719-4848
cgoodmark@gmail.com

[7] Plaintiff's counsel certifies that this brief is in Bookman Antiqua, 13 point.

/s/ Zack Greenamyre
Zack Greenamyre[8]
Georgia Bar No. 293002
Mitchell & Shapiro LLP
3490 Piedmont Road, Suite 650
Atlanta, Georgia 30305
404-812-4751
zack@mitchellshapiro.com

*Attorneys for Plaintiffs*

[8] Admission to Northern District of Georgia Bar, pursuant to Local Rule 83.1, pending.

## CERTIFICATION OF ELECTRONIC FILING

The undersigned hereby certifies the filing of this Complaint, motion and accompanying brief, and verifications upon the parties and all counsel by the Court's Electronic Filing System.

DATED: This the 23d day of January, 2017.

/s/ Gerald Weber

Gerald Weber
Georgia Bar No. 744878